[Cite as *State v. Nickelson*, 2020-Ohio-1149.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SHAROD DESHAWN NICKELSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 BE 0039**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 15 CR 237

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Motion to Withdraw Plea is Granted.  Convictions are Vacated.

---

*Atty. Dan Fry*, Belmont County Prosecutor, 147-A West Main Street, St. Clairsville, Ohio 43950 and *Atty. J. Flanagan*, Assistant Prosecuting Attorney for Plaintiff-Appellee (No Brief Filed) and

Sharod Deshawn Nickelson*, Pro Se,* #726-744,  North Central Correctional Institution, P.O. Box 1812, 670 Marion-Williamsport Road East, Marion, Ohio 43302, Defendant-Appellant.

Dated:  March 27, 2020

_____

**D'Apolito, J.**

{¶1}    Appellant Sharod Deshawn Nickelson, acting pro se, appeals the denial of his pro se post-sentence motion to withdraw his no contest plea by the Belmont County Court of Common Pleas, following his conviction for one count of trafficking drugs (cocaine), in violation of R.C. 2925.03(A)(2)(C)(4)(g), a felony of the first degree, with a forfeiture specification (count one); and one count of trafficking drugs (oxycodone), in violation of R.C. 2925.03(A)(2)(C)(1)(d), a felony of the second degree, with a forfeiture specification (count two).  Appellee did not file a brief.

{¶2}    Following Appellant's entry of a no-contest plea, the trial court imposed a mandatory eleven-year sentence for count one and an eight-year sentence for count two. The trial court imposed the sentences to run concurrently with one another, but consecutively to Appellant's previously-imposed 87-month federal sentence for conspiracy to distribute and possess with the intent to distribute oxycodone in violation of 28 U.S.C. 841(a)(1) and 846.  Pursuant to the plea agreement, $9,190.50 in currency was forfeited to the State.

{¶3}    In his direct appeal, Appellant challenged the trial court's denial of his motion to suppress, however, we found no error.  *State v. Nickelson*, 7th Dist. Belmont No.16 BE 0039, 2017-Ohio-7503.  Roughly two years later, Appellant filed the post-sentence motion to withdraw plea before us in this appeal.

{¶4}    In his first assignment of error, Appellant argues that the denial of his motion to withdraw his plea constitutes an abuse of discretion, because his eleven-year sentence for trafficking cocaine is void pursuant to R.C. 2925.50.  That statute abrogates dual sovereignty by barring prosecution for a state drug offense if the offender was acquitted or convicted under the federal drug abuse control laws for the "same act."  Appellant was convicted for one count of conspiracy to distribute and possess with the intent to distribute oxycodone, in violation of 21 U.S.C. 846 and 841(a)(1) and (b)(1)(C), in the United States District Court, Northern District of West Virginia, roughly three months before he entered his no contest plea in Belmont County.  In his second assignment of error, which he did not assert in his pro se motion before the trial court, Appellant asserts that his trial counsel

rendered ineffective assistance because he failed to raise or argue a motion for acquittal based on R.C. 2925.50.

**{¶5}** Having reviewed the record, including the evidence attached to Appellant's motion, we find that both of Appellant's state convictions were predicated upon the trafficking of drugs on October 14, 2015. At Appellant's plea hearing in federal court, the testimony of a state highway patrolman established that the conspiracy charge to which Appellant was entering his plea included drug crimes committed through October of 2015 in Bellaire, Ohio. As a consequence, we find that the state was barred by statute from prosecuting not only the cocaine trafficking charge challenged in the pro se post-sentence motion to withdraw plea, but also the oxycodone trafficking charge, because they are both based on the same acts as the federal conspiracy conviction.

**{¶6}** We find that the trial court committed an abuse of discretion because it did not consider the statute or the material attached to the pro se motion. We further find that Appellant has demonstrated a manifest injustice, insofar as he will serve an eleven-year sentence and has forfeited property based on a prosecution prohibited by statute. Accordingly, Appellant's motion to withdraw his plea is granted, both of Appellant's convictions are vacated, as are the orders of forfeiture, and, further, the state is barred from any criminal drug prosecution based on Appellant's conduct on October 14, 2015 in Bellaire, Ohio.

## FACTS AND PROCEDURAL HISTORY

**{¶7}** On November 3, 2015, Appellant was indicted in the United States District Court, Northern District of West Virginia for conspiracy to distribute and possess with the intent to distribute oxycodone "beginning by at least 2011, the exact date being unknown to the Grand Jury, and continuing to in [sic] or about October 2015, in Ohio County, within the Northern District of West Virginia, and elsewhere" in violation of 21 U.S.C. 841 and 846. 21 U.S.C. 841, prohibits any person from knowingly and intentionally distributing, or possessing with the intent to distribute a controlled substance. 21 U.S.C. 846 reads, in its entirety, "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Case No. 19 BE 0039

**{¶8}** Two days later, on November 5, 2015, Appellant was indicted in Belmont County for two counts of drug trafficking, cocaine in count one and oxycodone in count two, "on or about October 14-15, 2015," in violation of R.C. 2925.03(A)(2)(C)(4)(g) and (1)(d), respectively. R.C. 2925.03 (A)(1), captioned "Trafficking offenses," prohibits any person from preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.

**{¶9}** On November 11, 2015, Appellant filed a motion to suppress in the Belmont County case, which alleged that evidence obtained from a motel room that he rented on October 14, 2015 was illegally obtained. The denial of the motion to suppress was the subject of Appellant's direct appeal and an application to reopen. We found no merit in either appeal.

**{¶10}** Relevant to the current appeal, the parties stipulated at the hearing on the motion to suppress that Appellant rented two motel rooms in St. Clairsville, Ohio on October 14, 2015, one at the Comfort Inn and the other at the Days Inn. Members of the Comfort Inn staff reported suspected drug activity to the Belmont Sheriff's Department, but the motel staff members were reluctant to risk their own safety to evict Appellant from the room. As a consequence, two sheriff's deputies effected the eviction.

**{¶11}** The deputies knocked and announced their intent to evict Appellant, but Appellant refused to open the door. When the deputies opened the door with a key card provided by the motel staff members, a bag of pills was in plain view. A warrantless search of the motel room yielded oxycodone and over $9,000 in cash, as well as two key cards to the Days Inn motel room. The deputies acquired a search warrant for the Days Inn motel room, which yielded over 100 grams of cocaine. In the direct appeal, we reasoned that the warrantless search of the Comfort Inn motel room was valid because the deputies were assisting the motel employees in effecting an eviction, and the bag of pills was in plain view. *Nickleson, supra.*

**{¶12}** Appellant entered a guilty plea to the conspiracy charge in federal court on January 11, 2016. At the plea hearing, the trial court accepted the testimony of West

Virginia State Patrolman, Luther White. Patrolman White provided the following testimony to establish the factual basis for the plea:

> Q:     Would you briefly describe the background of the investigation concerning the defendant.
>
> A:     Yes, sir. The conspiracy is based upon historical testimony from confidential informants, as well as controlled buys and seizures from the defendant.
>
> Q:     And essentially what did those controlled buys, the historical information as well as the seizures, tell you or lead to?
>
> A;     We had bank records as far back as 2011 in which the defendant had made in excess of $25,000 worth of deposits from Bellaire, Ohio, *as well as just recently, in October of 2015, authorities in Ohio executed a search warrant in which a felony amount of drugs and a large amount of currency were seized from the defendant.*
>
> Q:     And so the conspiracy that's basically the background of the beginning and ending dates of the conspiracy in this case?
>
> A:     Yes, sir.

(Emphasis added)(1/11/16 Fed. Plea Hrg., p. 18-19.) Patrolman White's testimony at the federal plea hearing was factually incorrect, insofar as the deputies seized oxycodone and $9,000.00 in cash as a result of the warrantless search. The search of the second hotel room, which was executed pursuant to a warrant, yielded cocaine, but no currency.

{¶13} On March 4, 2016, the Northern District of West Virginia imposed a sentence of eighty-seven months for the conspiracy conviction. The remaining federal charges, which related to Appellant's additional drug activity in West Virginia and are not relevant to this appeal, were dismissed pursuant to the terms of the plea agreement.

{¶14}   On June 16, 2016, Appellant entered no contest pleas to both counts of drug trafficking in Belmont County. The transcript of the plea hearing is not in the record.

Case No. 19 BE 0039

However, the judgment entry on the plea reads that count one carries a mandatory eleven-year sentence, and that the state intended to recommend an eleven-year sentence for count one and an eight-year sentence for count two, to run concurrently with one another, but consecutively to the existing federal sentence. The judgment entry further reads that "[Appellant] agrees with the above except he will request that this eleven (11) year sentence be served concurrently with the said Federal Court sentence." (6/22/16 J.E., ¶ 5.)

{¶15} At the sentencing hearing on June 23, 2016, Appellant's trial counsel asked the trial court to impose the sentences for the drug trafficking convictions to be served concurrently with the federal sentence. Defense counsel argued:

> I think there is sufficient overlap in the behavior charged by [the federal indictment] and this Indictment that even though we recognize dual sovereigns and authority to impose penalties separately, if that conspiracy charge subsumed or included the behavior here, which it appears that it did, I think concurrent sentences, concurrent with the eleven years, with the [eighty-seven] months in the Federal Court would be appropriate.

(6/23/16 Sent. Hrg., p. 6.)

{¶16} The prosecutor requested that the state sentence be imposed to run consecutively to the federal sentence and represented that the prosecution in West Virginia was "on a matter unrelated to [the state prosecution]." (6/23/16 Sent. Hrg., p. 3.) However, the trial court recognized that the federal conspiracy conviction was predicated upon conduct occurring between 2011 "through the date of his arrest in Belmont County." (*Id.*, p. 5.) Nonetheless, the trial court imposed the state sentences to run concurrently with one another, but consecutively to the federal sentence. Neither the state nor Appellant's trial counsel addressed the applicability of R.C. 2925.50 at the sentencing hearing.

{¶17} Roughly three years later, on July 25, 2019, Appellant filed the pro se motion to withdraw his plea that is the subject of this appeal. Appellant alleged that his

sentence for cocaine trafficking was void because it was imposed in contravention of R.C. 2925.50.

{¶18} The trial court overruled Appellant's motion to withdraw his plea the following day. The trial court opined that Appellant "was convicted of serious criminal conduct that occurred in Belmont County, Ohio," and that "his convictions are unaffected by whatever may have happened in the Federal Court for the State of West Virginia." The trial court further opined that "the Seventh District Court of Appeals has twice rejected Defendant's appeals and the Ohio Supreme Court has refused his further appeal." (7/26/19 J.E., p. 1.) This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

## TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT OVERRULED APPELLANT'S POST-MOTION TO WITHDRAW NO CONTEST PLEAS

{¶19} Ohio Crim. R. 32.1, captioned "Withdrawal of Guilty plea," reads, in its entirety, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Accordingly, "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus.

{¶20} A "manifest injustice" is a "clear or openly unjust act," *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), and relates to a fundamental flaw in the plea proceedings resulting in a miscarriage of justice. *State v. Straley*, -- Ohio St.3d --, 2019-Ohio-5206, -- N.E.3d --, ¶14. The term "has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *Id.*, quoting *Smith* at 264.

{¶21} We have recognized that "[m]anifest injustice to support withdrawal of a guilty plea can take the form of ineffective assistance of counsel." *State v. Brewer*, 7th Dist. Mahoning No. 14 MA 0127, 2016-Ohio-3224, ¶ 11. In seeking to invalidate a guilty

plea based on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that he was prejudiced by the deficiency, *i.e.* a reasonable probability that he would not have agreed to plead guilty but for counsel's deficiency. *Id.*, citing *State v. Helms*, 7th Dist. Mahoning No. 14 MA 96, 2015-Ohio-1708, ¶ 11.

**{¶22}** An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard. *Smith* at paragraph two of the syllabus; *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32. An abuse of discretion connotes more than an error of judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E .2d 144 (1980).

**{¶23}** "[A] criminal defendant cannot raise any issue in a post-sentence motion to withdraw a guilty plea that was or could have been raised at trial or on direct appeal." *State v. Reed*, 7th Dist. Mahoning No. 04 MA 236, 2005-Ohio-2925, ¶ 11. An exception to this principle exists if a defendant presents evidence dehors the record to support his claims. *State v. Brown*, 7th Dist. Columbiana No. 18 CO 0025, 2019-Ohio-2717, ¶ 12. Here, Appellant attached the federal indictment and the transcripts of the federal plea and sentencing hearings to his motion to withdraw his plea, which were outside of the record in the direct appeal.

**{¶24}** Ordinarily, under the Double Jeopardy Clause, a person cannot be prosecuted twice for the same offense. *See* Fifth Amendment to the U.S. Constitution ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"). However, the United States Supreme Court has long held that two prosecutions brought by different sovereigns do not violate double jeopardy. *Puerto Rico v. Sanchez Valle*, 136 S.Ct. 1863, 1871, 195 L.Ed.2d 179 (2016), citing *United States v. Lanza*, 260 U. S. 377, 382, 43 S. Ct. 141, 67 L.Ed. 314 (1922). States are separate sovereigns from the federal government, having their "authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment." *United States v. Gamble*, 694 Fed.Appx. 750, 751 (11th Cir.2017), citing *Sanchez Valle, supra.*

**{¶25}** However, the General Assembly enacted R.C. 2925.50 to prohibit dual-sovereign prosecutions under certain circumstances. R.C. 2925.50 reads, in its entirety,

"[i]f a violation of [Revised Code Chapter 29] is a violation of the federal drug abuse control laws * * *, a conviction or acquittal under the federal drug abuse control laws for the same act is a bar to prosecution in [Ohio]." R.C. 2925.50.

**{¶26}** The interpretation of the phrase "same act" is a matter of first impression in Ohio. When interpreting a statute, a court's primary concern is the legislative intent behind the enacting of the particular statute. *State v. S.R.*, 63 Ohio St.3d 590, 594, 589 N.E.2d 1319 (1992). It is axiomatic that a court must look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis*, 61 Ohio St.3d 213, 218, 574 N.E.2d 457 (1991). In undertaking that interpretation, the statute's words and phrases must be read in context and construed according to the rules of grammar and common usage. *Independent Ins. Agents of Ohio, Inc. v. Fabe*, 63 Ohio St.3d 310, 314, 587 N.E.2d 814 (1992); R.C. 1.42.

**{¶27}** Further, R.C. 1.49, captioned "Determining legislative intent," reads, in its entirety:

> If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:
>
> (A) The object sought to be attained;
>
> (B) The circumstances under which the statute was enacted;
>
> (C) The legislative history;
>
> (D) The common law or former statutory provisions, including laws upon the same or similar subjects;
>
> (E) The consequences of a particular construction;
>
> (F) The administrative construction of the statute.

**{¶28}** R.C. 2925.50 is a codification of section 405 of the Uniform Controlled Substances Act ("UCSA"), which is a product of the National Conference of Commissioners on Uniform State Laws ("NCCUSL"). Where, as here, the legislature makes a verbatim enactment of a uniform act provision, the intent of the drafters of the

uniform law is relevant, and we may presume the intent of the drafters is the intent of the legislature in the absence of evidence to the contrary. *See* 2B Sutherland, Statutory Construction § 52:05 (6th ed.2000).

**{¶29}** Although there is no legislative history in Ohio or the NCCUSL to guide our interpretation of the phrase "same act," courts in other states that have adopted section 405 of the model act provide some guidance. For instance, in the absence of legislative history, the Wisconsin Supreme Court predicated their interpretation of the phrase "same act" in Wis. Stat. 961.45 on the "context of the well-developed body of double jeopardy jurisprudence in existence at the time of the passing, adoption, and revision of those uniform acts." *State v. Hansen*, 243 Wis.2d 328, 2001 WI 53, 627 N.W.2d 195, ¶ 19 (referring to the UCSA and its predecessor the Uniform Narcotic Drug Act). The Wisconsin Supreme Court recognized that the uniform acts were created and revised during "an ongoing dialogue in the country as to the scope of the state and federal double jeopardy protections. In that dialogue courts consistently used a common lexicon that includes the terms 'act' and 'offense' to explain double jeopardy principles." *Id.,* ¶ 20.

**{¶30}** The *Hansen* Court considered the phrase "same act" in light of the "same elements" test devised by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* test is recognized in most jurisdictions, including Ohio, as the controlling test in determining whether multiple prosecutions are for the "same offense" in contravention of the double jeopardy protection. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304.

**{¶31}** Hansen argued that her federal cocaine conspiracy conviction prohibited the state from prosecuting a charge of possession with the intent to deliver cocaine. The federal and state charges were both predicated upon searches of Hansen's person, automobile, and apartment on September 29, 1997, which yielded various amounts of cocaine. The *Hansen* Court provided the following analysis of section 405 of the uniform act:

By asking us to construe "same act" to mean the crime as defined by the statutory elements, the State is asking us to translate "same act" as "same offense." However, the State's interpretation conflicts with the marked distinction between "act" and "offense" found in the case law. The terms are often juxtaposed, and this distinction has been described as the "act-offense dichotomy." Otto Kirchheimer, *The Act, the Offense and Double Jeopardy*, 58 Yale L.J. 513, 513 (1949). Given this dichotomy in the double jeopardy context, we conclude that NCCUSL intended the term to have the meaning commonly ascribed to it in that context: "same act" meant "same conduct."

As evidence of this dichotomy, we observe that *Blockburger* itself draws the distinction between acts and offenses that belies the State's interpretation of § 961.45. While the State argues that "same act" should be construed to incorporate the *Blockburger* test, that position cannot be reconciled with the language of *Blockburger*. In the oft-quoted formulation of the test to determine whether multiple convictions constitute convictions for the "same offense" in contravention of the Fifth Amendment's Double Jeopardy Clause, the *Blockburger* Court explained:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 303, 52 S.Ct. 180 (emphasis added). The Court also stated: "Here there was but one sale, and the question is whether, both sections being violated by the same act, the accused committed two offenses or only one." *Id.* (emphasis added).

The *Blockburger* Court thus used the term "same act" to describe the conduct which formed the basis of an offense. When describing a crime as defined by its elements, the *Blockburger* Court uses the term "offense,"

thereby tracking the language of the Fifth Amendment, which defines the protection against double jeopardy by reference to the "offence." U.S. Const. amend. V.

*Hansen, supra,* ¶ 22-24.

**{¶32}** Based on the foregoing analysis, the Wisconsin Supreme Court concluded that "the marked distinction between 'acts' and 'offenses' in the national double jeopardy discourse ongoing when the UNDA was created and persisting up to and beyond the passage of the UCSA, revealed that [the] NCCUSL intended the phrase 'same act' to share the meaning attributed to it in the case law and secondary materials." *Id.* at ¶ 30. The Wisconsin Supreme Court concluded that the NCCULS intended the phrase "same act" to mean "same conduct." Because the Wisconsin legislature adopted § 961.45 from the UCSA without revision or any other indication of a contrary legislative intent, the *Hansen* Court attributed the intent of NCCUSL to the state legislature.

**{¶33}** Courts in Michigan and North Carolina have reached the opposite conclusion regarding the phrase "same act" in section 405. Although neither court specifically mentioned *Blockburger, supra*, both applied an elements test. The Michigan Supreme Court has held that a federal conviction for conspiracy to possess with the intent to distribute cocaine was not the "same act" that gave rise to a state charge of possession with the intent to deliver cocaine. *People v. Zubke*, 469 Mich. 80, 664 N.W.2d 751 (2003) (applying M.C.L.A. 333.7409). Defining the word "act," as "[a] thing done, a deed," the *Zubke* Court reasoned that the act underlying the conspiracy was the agreement to possess cocaine, while the "thing done" giving rise to the state charge was actual physical possession of cocaine. *Id.* at 83-84.

**{¶34}** In *State v. Brunson*, 165 N.C.App 667, 599 S.E.2d 576 (2004), Brunson sold cocaine to an undercover officer on April 5, April 17, and May 1, 2001. She was charged in state court with three counts of conspiracy to traffic cocaine, nine counts of trafficking cocaine, and four counts of possession of cocaine with the intent to sell of deliver. Brunson was later charged in federal court for three counts of distributing cocaine in violation of 21 U.S.C. 841. Brunson entered a guilty plea and was convicted of one count

Case No. 19 BE 0039

of cocaine distribution, but the parties conceded that his federal sentence was predicated upon all three of the cocaine sales.

**{¶35}** The intermediate appellate court concluded that the state was prohibited from charging Brunson with the substantive cocaine charges because the elements of the state and federal violations were "'nearly identical.'" *Id.* at 670, quoting *State v. Woods,* 146 N.C.App. 686, 554 S.E.2d 383(2001)(interpreting N.C. Gen.Stat. 90-97). The *Brunson* Court further concluded that the three conspiracy charges constituted a single conspiracy, but that the state conspiracy charge was not barred because conspiracy is a separately prohibited in the United States Code. *Id.* at 671.

**{¶36}** Having considered the various interpretations of the phrase "same act" by other states that have adopted section 405 of the model act, we adopt the sound reasoning on the Wisconsin Supreme Court. We conclude that the phrase "same act" is ambiguous, and the NCCULS intended the phrase "same act" to mean "same conduct."

**{¶37}** On Ocotber 14, 2015, Appellant was engaged in the act of trafficking drugs in Bellaire, Ohio. The evidence in the record is not a series of controlled buys, but, instead, possession of drugs in quantities so great that the intent to distribute was imputed to Appellant. As a result of that "same conduct," the Northern District of West Virginia convicted Appellant of conspiracy to distribute and possession with the intent to distribute oxycodone, in violation of 18 U.S.C. 841 and 846. Because both counts of the state indictment charged Appellant with trafficking drugs on October 14, 2015, they are based on the "same act" for which Appellant was convicted in federal court.

**{¶38}** We find that the trial court's denial of Appellant's post-conviction motion to withdraw his plea was an abuse of discretion. In concluding that no manifest injustice had been shown, the trial court relied on the serious nature of the criminal conduct that occurred in Belmont County, Ohio, and opined that it was unaffected by "whatever may have happened in the Federal Court for the State of West Virginia." The trial court acted arbitrarily when it summarily dismissed the pro se motion, without any consideration of the statute or the materials attached to Appellant's post-sentence motion to withdraw his plea.

**{¶39}** Based on the record, we further find that Appellant's convictions and eleven-year sentence, and the forfeiture of his property, constitute a manifest injustice, insofar

as the state prosecution was barred in its entirety by statute.  Therefore, Appellant's first assignment is meritorious.

## ASSIGNMENT OF ERROR NO. 2

**APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL**

**{¶40}**  Appellant raises his ineffective assistance claim for the first time on appeal. Where arguments raised in an appellate brief were not raised to the trial court in a post-sentence motion to withdraw plea, this Court has declined to consider them for the first time on appeal. *State v. Staffrey*, 7th Dist. Mahoning No. 10 MA 130, 2011-Ohio-5760, ¶ 37, citing *State v. Robinson*, 7th Dist. Monroe No. 09MO6, 2010-Ohio-2698, ¶ 21.

## CONCLUSION

**{¶41}**  R.C. 2925.50 bars prosecution for a state drug offense if the offender was acquitted or convicted under the federal drug abuse control laws for the same act.   We find that the phrase "same act" means "same conduct," and, therefore, the state prosecution based on Appellant's conduct on October 14, 2015 was barred.  The trial court abused its discretion in concluding that Appellant had failed to show a manifest injustice, insofar as Appellant has been convicted of two felonies, will be incarcerated for eleven years, and has forfeited property, as a result of a prosecution that was statutorily prohibited.  For the forgoing reasons, Appellant's motion to withdraw his plea is granted, both of Appellant's convictions are vacated, as are the orders of forfeiture, and, further, the state is barred from any criminal drug prosecution based on Appellant's conduct on October 14, 2015 in Bellaire, Ohio.

Donofrio, J., concurs.

Waite, P.J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's motion to withdraw his plea is granted, both of Appellant's convictions are vacated, as are the orders of forfeiture. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**